Merrimack
No. 2004-052

RICHARD BENSON, M.D. & a.

v.

NEW HAMPSHIRE INSURANCE GUARANTY ASSOCIATION

Argued: September 23, 2004
Opinion Issued: December 29, 2004

*Jordan, Gfroerer & Weddleton*, of Concord (*Michael G. Gfroerer* on the brief and orally), for the plaintiffs.

*Nixon Peabody LLP*, of Manchester (*W. Scott O'Connell & a.* on the brief, and *Mark D. Robins* orally), for the defendant.

DALIANIS, J. The plaintiffs, Dr. Richard Benson, Dr. Dennis Card and the New Hampshire Medical Society, appeal the order of the Superior Court (*McGuire*, J.) dismissing their petition for declaratory judgment for failure to state a claim upon which relief can be granted. We affirm in part, reverse in part and remand.

The relevant facts follow. Benson and Card carried "claims-made" medical malpractice liability insurance from PHICO Insurance Company (PHICO). Claims-made policies provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period. *Bianco Prof. Assoc. v. Home Ins. Co.*, 144 N.H. 288, 296 (1999). By the time they retired, Benson and Card separately purchased extended reporting period (ERP) coverage (also known as "tail" coverage) from PHICO. Tail coverage is designed to extend malpractice insurance coverage for acts which may have occurred during practice, but are not reported until later.

PHICO was declared insolvent by the Commonwealth Court of Pennsylvania on February 1, 2002. Upon the insolvency of PHICO, the New Hampshire Insurance Guaranty Association (NHIGA) issued a notice to PHICO policyholders and claimants stating, "Under New Hampshire law, [NHIGA] is obligated to pay covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency . . . ." The notice informed policyholders that all covered claims under extended reporting period policies arising more than thirty days after February 1, 2002, would be denied.

The plaintiffs filed a petition on March 21, 2003, naming NHIGA and PHICO as defendants, seeking a declaration that NHIGA was obligated "to undertake all contractual obligations owed" by PHICO, and a judgment that NHIGA must provide tail coverage to individual plaintiffs and similarly affected policyholders in New Hampshire. The action against PHICO was indefinitely stayed by the trial court, pursuant to the Pennsylvania Commonwealth Court's Liquidation Order.

NHIGA filed a plea in abatement to dismiss the Medical Society for lack of standing. The trial court granted the plea in abatement, finding that the Medical Society failed to challenge the merits of the plea in abatement, and noting it was unaware of any grounds upon which the Medical Society could do so. The Medical Society appeals this issue, arguing that the trial court erred by not allowing the Medical Society to amend its pleading to cure the alleged defects.

NHIGA then filed a motion to dismiss for failure to state a claim upon which relief can be granted against the remaining plaintiffs. NHIGA argued that the plaintiffs failed to allege the existence of any covered claims as defined by RSA 404-B:5, IV (1998) (amended 2003, 2004). The trial court agreed, finding that possible future claims, as alleged by the plaintiffs, are not covered claims within NHIGA's statute of origin. *See* RSA 404-B:8, I(a) (1998). Benson and Card then filed a motion for reconsideration, which was denied. They appeal, arguing that NHIGA has the same obligations under extant insurance contracts as insolvent insurer PHICO would have had. They also argue that possible future claims must be treated as covered claims under RSA chapter 404-B.

We first address the Medical Society's appeal from the order granting the plea in abatement. The Medical Society argues that where grounds for abatement exist, the appropriate remedy is for the court to allow the plaintiff to cure the defect by amending its pleadings. *See* 4 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 10.11, at 250 (1997). The Medical Society argues that the trial court erred by not

allowing it to amend its initial petition for declaratory judgment; however, the Medical Society never moved to amend its petition.

■ We assume the allegations set forth in the petition for declaratory judgment are true. For purposes of determining whether the Medical Society could have cured the defect by amending its pleadings, we will also assume that the allegations set forth in the plaintiffs' brief are true. We conclude that the Medical Society has not asserted a legal or equitable right sufficient to bring a declaratory judgment action. In order to maintain a petition for a declaratory judgment, a plaintiff must claim a "present legal or equitable right or title." RSA 491:22, I (1997). A party will not be heard to question the validity of a law, or of any part of it, unless he shows that *some right of his* is impaired or prejudiced thereby. *Silver Brothers, Inc. v. Wallin*, 122 N.H. 1138, 1140 (1982).

■ Despite the Medical Society's assertion, its status as the "representative membership organization for medical practitioners statewide" does not give it a "clear and direct interest in the litigation." Only those with a present legal or equitable right have standing to sue NHIGA; *i.e.*, those who carried tail coverage through PHICO. The Medical Society admits that it was not insured by PHICO. Consequently it has no tail coverage, and no rights to enforce against NHIGA. In addition, the Medical Society's presence is completely unnecessary, because all New Hampshire doctors holding tail coverage from PHICO are likely to be equally affected. Therefore, we hold that the Medical Society lacks standing as a matter of law, and we affirm the trial court's order granting the plea in abatement.

Next we turn to NHIGA's argument that the order granting the motion to dismiss should be upheld on the grounds that a declaratory judgment petition is not the appropriate vehicle for the remaining plaintiffs' claims. "Any person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive." RSA 491:22, I (1997). NHIGA argues that Benson and Card are not seeking a present legal or equitable right because they seek coverage for future claims. We disagree.

■■ Where a plaintiff seeks a declaratory judgment, he is not seeking to enforce a claim against the defendant, but rather a judicial declaration as to the existence and effect of a relation between him and the defendant. *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 621 (2004). The remedy of declaratory judgment affords relief from uncertainty and

insecurity created by a doubt as to rights, status or legal relations existing between the parties. Petitions for declaratory relief must be liberally construed so as to effectuate the evident purpose of the law. *Radkay v. Confalone*, 133 N.H. 294, 296-97 (1990).

While the plaintiffs' claims may be couched in hypothetical language, they are seeking a judicial declaration of NHIGA's present legal obligations. An insurer who signs a contract with a customer is legally obligated to provide coverage to that customer, and thus has a present obligation, notwithstanding the possibility that its specific duties under the policy may not arise until sometime in the future. The plaintiffs are seeking a declaration that NHIGA has such a present obligation as guarantor of insolvent insurer PHICO. The notice sent to policyholders by NHIGA created uncertainty as to the status of the PHICO tail coverage which the plaintiffs purchased. The plaintiffs seek relief from this uncertainty by means of a declaratory judgment action. Accordingly, we find that this matter is properly brought as a petition for declaratory judgment.

Next we turn to the plaintiffs' appeal from the order granting NHIGA's motion to dismiss. The standard of review in considering a motion to dismiss is whether the plaintiffs' allegations are reasonably susceptible of a construction that would permit recovery. Although we assume the truth of the facts alleged in the plaintiffs' pleadings and construe all reasonable inferences in the light most favorable to the plaintiffs, we will uphold the grant of the motion to dismiss if the facts pled do not constitute a basis for legal relief. *Estate of Ireland v. Worcester Ins. Co.*, 149 N.H. 656, 657-58 (2003).

The plaintiffs argue that since there is no deadline for *filing* claims in RSA chapter 404-B, NHIGA should be liable on any claims that arise under PHICO's tail coverage policies. They argue first that the claims which may be brought in the future must be treated as covered claims, alternatively, that NHIGA must "stand in the shoes" of the insolvent insurer by the terms of the statute, and still alternatively, that NHIGA must act as the insurer of last resort. NHIGA argues that since the plaintiffs have not alleged any claims arising within the thirty-day period prescribed by the statute, it is not required to provide coverage to the plaintiffs. *See* RSA 404-B:8, I(a).

In order to evaluate whether the pleadings constitute a basis for legal relief, we must examine the New Hampshire Insurance Guaranty Act (Guaranty Act), RSA chapter 404-B. We are the final arbiter of the intent of the legislature as expressed in the words of a statute. Where a statute

fails to define a disputed term, we assign its plain and ordinary meaning. Moreover, we interpret the plain meaning of a statute to effectuate its underlying purpose. *State v. Beckert,* 144 N.H. 315, 316-17 (1999).

In 1969, the National Association of Insurance Commissioners (NAIC) promulgated the Post-Assessment Property and Liability Insurance Guaranty Association Model Act (Model Act). *See Harold Ives Trucking Co. v. Pickens,* 139 S.W.3d 471, 475 n.1 (Ark. 2003). Nearly every State has since adopted the Model Act in some form. *See American Employers' v. Elf Atochem,* 725 A.2d 1093, 1097 (N.J. 1999). RSA chapter 404-B is based upon the Model Act and is virtually identical in both purpose and language to statutes in numerous other jurisdictions. N.H.S. JOUR. 574 (1975); *N.H. Ins. Guaranty Assoc. v. Pitco Frialator,* 142 N.H. 573, 577 (1998). We interpret it by focusing first upon its language, then by considering the context of the overall statutory scheme, and finally, by looking for guidance to other States' interpretations of similar statutes. *Pitco Frialator,* 142 N.H. at 577-78.

Of the States that have adopted a version of the Model Act, most include a filing deadline, after which claims against the State's guaranty association may not be brought. For example, Connecticut law states that the guaranty association will not be "obligated for any claim filed with [it] after the expiration of two years from the date of the declaration of insolvency ...." Conn. Gen. Stat. § 38a-841(1)(a)(ii)(B) (2000 & Supp. 2004). Some States, like Rhode Island, require the bankruptcy court to establish a bar date, excluding from the meaning of "covered claim" "any claim filed with the [guaranty association] after the final date set by the court for the filing of claims ...." R.I. Gen. Laws § 27-34-8(a)(1)(iii) (2002).

At least eleven States, including New Hampshire, adopted a version of the NAIC Model Act without including a filing deadline. *See, e.g.,* RSA ch. 404-B; Mass. Gen. Laws ch. 175D (1998) (amended 2002). While the legislature chose not to include the simple expedient of a filing deadline in RSA chapter 404-B, it did provide that NHIGA would only be "obligated to the extent of the covered claims *existing prior* to the determination of insolvency and *arising within 30 days after* the determination of insolvency ...." RSA 404-B:8, I(a) (1998) (emphasis added). In order to determine NHIGA's obligations under the statute, we must determine when a covered claim exists and arises.

A covered claim is defined in relevant part as "a net unpaid claim ... which arises out of and is within coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer after the effective date of this chapter is declared insolvent ...." RSA 404-B:5, IV.

· The plaintiffs argue that a covered claim arises when the tortious act occurs, contending that their original claims-made policies were converted into occurrence-based policies by the addition of the tail coverage. An occurrence-based policy is one "in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period . . . ." *Bianco Prof. Assoc.*, 144 N.H. At 296. Since RSA chapter 404-B has no filing deadline, the plaintiffs argue, NHIGA should be held liable for all claims resulting from negligent acts that occurred prior to or within thirty days of the insolvency declaration, no matter when filed, so long as the underlying statute of limitations for the tort has not expired.

· The plaintiffs argue that all of the statutory criteria for covered claims are either alleged or undisputed, except that no liability claims have actually been made against them. The plaintiffs urge us to find that the absence of a filing deadline in the Guaranty Act requires NHIGA to honor completely the PHICO tail coverage policies, in effect serving as substitute insurer.

In support of their argument, the plaintiffs submitted a version of the July 1996 Model Act in which the comments indicate that the thirty-day limit was intended merely to be a transitional period during which policyholders could procure new coverage. POST-ASSESSMENT PROPERTY AND LIABILITY INSURANCE GUARANTY ASSOCIATION MODEL ACT § 8(A)(1)(b) cmt. (NAIC 1996) *in* III NAIC, MODEL LAWS REGULATIONS AND GUIDELINES at 540-46. The plaintiffs further note that most States that have a statutory filing deadline also include "transitional" language similar to that found in RSA 404-B:8, I(a), arguing that the thirty-day limit was not intended to serve as a filing deadline in those States.

·· NHIGA, on the other hand, urges us to read the thirty-day period as a filing deadline, arguing that the plaintiffs must allege an "actual covered claim" which arose prior to the expiration of the thirty-day period. NHIGA argues that since no claims were filed or alleged, it has no further obligation to the plaintiffs under the statute. By NHIGA's interpretation, a claim "arises" when filed with it, or otherwise brought to its attention.

We disagree with both parties' interpretation of the words "arise" and "exist." Any malpractice claims against the plaintiffs, who retired prior to PHICO's insolvency declaration, would necessarily be the result of events that took place prior to or within thirty days of PHICO's insolvency. However, for a claim to arise, a person must have suffered harm caused by the alleged malpractice, since a cause of action arises only when all the necessary elements are present. A cause of action for tort arises when causal negligence is coupled with *harm* to the plaintiff.

*Conrad v. Hazen,* 140 N.H. 249, 252 (1995). A potential medical malpractice claimant has a cause of action the moment harm is suffered. If the claimant suffered harm prior to the expiration of the thirty-day period during which claims can arise under the statute, then NHIGA will be obligated on that claim no matter when it is filed, within the underlying statute of limitations, because RSA chapter 404-B does not contain a filing deadline. If the harm was not suffered before the expiration of the thirty-day period, however, the claim did not arise within the period, and NHIGA is not obligated on that claim.

■ At the hearing on the motion for reconsideration, the plaintiffs expressed their concern about the operation of the discovery rule, RSA 508:4, I (1997), and the minority rule, RSA 508:8 (1997). Under the discovery rule, if the harm and its causal relationship to the negligent act is not discovered or could not reasonably have been discovered when the negligent act occurred, the statute of limitations does not begin to run until the plaintiffs discover or in the exercise of reasonable diligence should have discovered this causal relationship. *Pichowicz v. Watson Ins. Agency,* 146 N.H. 166, 167 (2001). The discovery rule extends the time during which a person may bring suit based upon when he discovered, or should have discovered, the harm done. However, as noted above, a claim does not arise until harm is suffered; therefore, NHIGA remains obligated on claims that arose within the thirty-day period. Any claim that has not arisen until after the expiration of the thirty-day period is not covered under RSA chapter 404-B.

■ The minority rule, however, could extend the period during which NHIGA is obligated on a claim. The minority rule provides that a minor has until two years after having reached the age of majority to bring a personal injury action. *Norton v. Patten,* 125 N.H. 413, 414 (1984). If a minor suffered harm before the expiration of the thirty-day period, resulting from the negligent act of one of the plaintiffs, the minor has a claim which arose within the statutory time limit. Since RSA chapter 404-B has no filing deadline, NHIGA is obligated on the claim, as long as it is filed within two years after the minor reaches majority.

The plaintiffs next argue, in the alternative, that NHIGA is obligated on all claims, even those that arise after the thirty-day period, because NHIGA must "stand in the shoes" of the insolvent insurer. As support for their argument, the plaintiffs point to one of the stated purposes of the Guaranty Act: to provide a "mechanism . . . to avoid financial loss to claimants or policyholders because of the insolvency." RSA 404-B:2 (1998). The Act provides that the NHIGA shall "[b]e deemed the insurer to the

extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not been insolvent." RSA 404-B:8, I(b) (1998). The plaintiffs read the statute as requiring NHIGA to "stand in the shoes" of the insolvent insurer, and so argue that they do not need to allege the existence of covered claims. We disagree.

■ We find the words "to the extent" and "to such extent" in RSA 404-B:8, I(b) controlling, and find that they refer back to "covered claims." Contrary to the plaintiffs' argument, NHIGA has no duty to act as the insolvent insurer would have beyond its obligation for covered claims as defined by the statute. As discussed above, if no claims arise as required by RSA chapter 404-B, NHIGA has no statutory obligation to "stand in the shoes" of the insolvent insurer.

Finally, the plaintiffs argue that our case law establishes NHIGA as the "insurer of last resort" and, as such, it should function as a substitute insurer. *See Pitco Frialator*, 142 N.H. at 579. Although we identified the Guaranty Act's overall objective as establishing NHIGA as an insurer of last resort in *Pitco Frialator*, that case addressed a claimant's duty to exhaust workers' compensation and other available insurance funds before NHIGA becomes obligated on a claim. Because the plaintiff in *Pitco Frialator* had already received workers' compensation benefits, he could not seek further relief from NHIGA. *See id.* Our recognition that NHIGA is the insurer of last resort in that limited respect does not support the argument that it must act as a substitute insurer and provide full recovery.

■ The statutory framework of NHIGA prevents it from becoming a substitute insurer. The Guaranty Act created a nonprofit unincorporated legal entity, comprised of member insurers—entities that write and transact insurance in New Hampshire. RSA 404-B:5, VI; RSA 404-B:6 (1998). NHIGA assesses its members the costs of claims brought against it, in proportion to their market share for the previous year, with the exception that no assessment shall be "greater than 2 percent of that member insurer's net direct written premiums for the preceding calendar year . . . ." RSA 404-B:8, I(c) (1998). The protection it provides is limited based upon its status as a nonprofit entity and the method by which it is funded. *See Hunnihan v. Mattatuck Mfg. Co.*, 705 A.2d 1012, 1018 (Conn. 1997). It is governed by a board of directors, selected by the member insurers, with the approval of the commissioner of insurance. RSA 404-B:7, I (1998). NHIGA is authorized to refund any assets found by the board of directors to exceed liabilities, at the end of a calendar year, to its members in proportion to their contribution. RSA 404-B:8, II(f) (1998).

Unlike a regular insurance company, NHIGA does not have a store of profits from which to draw money to pay out claims.

The Act also provides that "rates and premiums charged for insurance policies to which this chapter applies shall include amounts sufficient to recoup a sum equal to the amounts paid to the association by the member insurer . . . ." RSA 404-B:16 (1998). This section effectively requires the member insurers to pass on the costs of membership in NHIGA to their customers through insurance rates and premiums. The insurance-buying public pays for covered claims brought against NHIGA under the statute. It is therefore unlikely that the legislature intended NHIGA to act as substitute insurer when a member became insolvent. This would result in the public paying for more than the occasional covered claim arising within the stated time period; the public would, in fact, bear the costs of all malpractice claims brought against the plaintiff doctors until the underlying statute of limitations expired. "Limitations on the association's obligations, therefore, provide another form of protection against increased premiums for policyholders . . . ." *Hunnihan*, 705 A.2d at 1019.

Finally, the comment to the July 1996 Model Act that the plaintiffs submitted indicates that guaranty associations based upon the act were not intended to act as substitute insurers. "The basic principle is to permit policyholders to make an orderly transition to other companies. There appears to be no reason why the association should become in effect an insurer in competition with member insurers by continuing existing policies, possibly for several years." POST-ASSESSMENT PROPERTY AND LIABILITY INSURANCE GUARANTY ASSOCIATION MODEL ACT § 8(A)(1)(b) cmt. (NAIC 1996).

Other States that have adopted similar statutes have found that their respective guaranty associations were not intended to become new insurers for all purposes. "[T]he legislative desire to assist claimants cannot be, and is not intended to be, bureaucratic benevolence." *Carpenter Tech. v. Admiral Ins.* 800 A.2d 54, 61 (N.J. 2002). "While CIGA's general purpose is to pay the obligations of an insolvent insurer, it is not itself an insurer and does not 'stand in the shoes' of the insolvent insurer for all purposes." *R.J. Reynolds v. Cal. Ins. Guarantee Ass'n*, 1 Cal. Rptr. 2d 405, 408 (Ct. App. 1991) (quotation omitted). "[CIGA] is *not* in the 'business' of insurance . . . . CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds. Its 'business' is providing insureds with a limited form of protection from financial loss occasioned by the insolvency of their insurer." *Isaacson v. California Ins. Guar. Ass'n*, 750 P.2d 297, 305 (Cal. 1988).

Because we conclude that NHIGA is obligated to provide coverage to the plaintiffs, though only to the extent of claims that arose prior to or within thirty days of the declaration of insolvency, we reverse the order granting the motion to dismiss. We remand to the trial court for entry of a declaratory judgment in accordance with this opinion.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.