Grafton
No. 2010-661

THOMAS MORRISSEY & a.

v.

TOWN OF LYME & a.

Argued: September 21, 2011
Opinion Issued: December 8, 2011

*Bernstein, Shur, Sawyer & Nelson, P.A.*, of Manchester (*Gregory E. Michael* and *Christopher G. Aslin* on the brief, and *Mr. Michael* orally), for the petitioners.

*Mitchell Municipal Group, P.A.*, of Laconia (*Judith E. Whitelaw* on the brief and orally), for respondent Town of Lyme.

*Michael A. Delaney*, attorney general (*Daniel J. Licata*, assistant attorney general, on the memorandum of law and orally), for respondents New Hampshire Department of Environmental Services and New Hampshire Fish and Game Department.

HICKS, J. The petitioners, Thomas Morrissey, Dorothy Sears, Reginald Rogers, John Quimby, Michael O'Donnell, Jonathan Chamberlain, Patricia Reynolds, Richard and Barbara Sanders, Margaret Russell, and Robert and Judith Dupuis, appeal an order of the Superior Court (*Vaughan,* J.) granting motions to dismiss filed by the respondents, New Hampshire Department of Environmental Services (DES) and New Hampshire Fish and Game Department (Fish and Game), collectively referred to as the State, and Town of Lyme (Town). We affirm.

The following facts derive from the petitioners' allegations, which we accept as true for the purposes of this appeal, the trial court's order, or are established as a matter of law. Post Pond is a great pond in Lyme, held in trust by the State for public use. *See* RSA 271:20 (2010) (amended 2011); *see also Purdie v. Attorney General*, 143 N.H. 661, 666 (1999) ("We have held that large ponds are owned by the State in trust for public use up to their

'natural mean high water mark.' "). The waters of Post Pond flow northwest through Clay Brook to the Connecticut River. The land surrounding Clay Brook for the first half mile is entirely wetlands (Clay Brook wetlands).

The petitioners own properties with frontage on Post Pond and the west side of the Clay Brook wetlands. The Town owns property on the east side of the Clay Brook wetlands as well as a contiguous parcel with frontage on Post Pond, which consists of a recreation area. The recreation area includes playing fields, several tennis courts and a private beach. The playing fields are located in wetlands associated with the inlet brook to Post Pond and, as a result, do not have adequate drainage.

Beaver dams located in the wetlands have historically controlled the water level of Post Pond and the Clay Brook wetlands. In the spring of 2004, the Town adopted a water release policy prohibiting the breaching of beaver dams and the lowering of the water level of Post Pond. In December 2004, DES determined that the natural mean high water mark (Water Mark) for Post Pond corresponds to a level of three feet on the local staff gauge. Subsequently, the Town modified its water release policy to permit the breaching of beaver dams only when the water level exceeds the Water Mark.

In 2006, the Lyme Conservation Commission (Commission) received a wetlands permit from DES for the installation of a "beaver pipe" through the controlling beaver dam in the wetlands. The Commission installed the beaver pipe to stabilize the water level in Post Pond at the Water Mark. Abutters were notified in advance of the installation. In 2007, the Commission installed two additional beaver pipes in the wetlands, one within the setback from Rogers' property line and the other on property owned by Sears. The Commission did not obtain a permit to install these two pipes nor did it notify Rogers or Sears of its actions. The Town also breached beaver dams on Sears' property, leaving refuse and debris deposits in the wetlands on her property.

In 2008, the Town changed its water release policy such that trained town employees were authorized to breach the beaver dams if the water level of Post Pond exceeded two feet on the local staff gauge. This was done to increase the size of the town beach and save money in improving the playing field. The Commission then lowered the two beaver pipes it had installed in 2007, which resulted in a water level of one foot seven inches on the local staff gauge. Shortly thereafter, the Commission breached the controlling beaver dam on Rogers' property, which dropped the water level to one foot three inches. These actions achieved the desired result of expanding the size of the town beach and reducing the Town's cost of improving the playing fields by increasing the separation between Post Pond and the fields.

In May 2009, the petitioners filed a petition in equity and writ of mandamus alleging that the Town's actions adversely affected their properties and property rights and disrupted the entire Clay Brook wetlands ecosystem. They requested the court to find that the Town had violated RSA chapter 482-A, RSA chapter 483-B, RSA chapter 212-A, the public trust doctrine, the town zoning ordinance and a conservation easement. They also asked the court to find that the Town had trespassed on Sears' and Rogers' property, created and maintained a private nuisance by unreasonably interfering with the petitioners' use and enjoyment of their properties and committed a taking. They requested that the court order the Town to comply with the relevant statutes, restore the water level in Post Pond to the Water Mark, remediate certain erosion and siltation problems, and cease its trespass, taking and nuisance activities. The petitioners further alleged that the State had failed to fulfill its statutory duties to regulate the Town's actions. Consequently, they asked the court to find that the State had violated certain enumerated statutes and the public trust doctrine and sought to have the court order it to comply with the relevant statutes.

The respondents moved to dismiss. The Town sought to dismiss all of the petitioners' claims except the Sears' and Rogers' trespass claims, arguing that the petitioners failed to state a claim upon which relief could be granted and that certain petitioners lacked standing. The State argued that the petition failed to allege facts entitling the petitioners to mandamus relief. The trial court granted both motions. The petitioners' motion to reconsider the dismissal of their nuisance claim was denied and the trial court later granted the petitioners' motion for voluntary nonsuit without prejudice to their remaining trespass claims against the Town. This appeal followed.

In reviewing a motion to dismiss, our standard of review is whether the allegations in the petitioners' pleadings are reasonably susceptible of a construction that would permit recovery. *J & M Lumber & Constr. Co. v. Smyjunas*, 161 N.H. 714, 724 (2011). We assume the petitioners' pleadings to be true and construe all reasonable inferences in the light most favorable to them. *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 611 (2010). We need not assume the truth of statements in the petitioners' pleadings, however, that are merely conclusions of law. *Id.* We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Id.*

■ The petitioners first argue that the trial court erred in dismissing their private nuisance claim against the Town. "A private nuisance exists

when an activity substantially and unreasonably interferes with the use and enjoyment of another's property." *Cook v. Sullivan*, 149 N.H. 774, 780 (2003) (quotation omitted). "To constitute a nuisance, the defendant's activity must cause harm that exceeds the customary interferences a land user suffers in an organized society, and be an appreciable and tangible interference with a property interest." *Dunlop v. Daigle*, 122 N.H. 295, 298 (1982) (quotations and citation omitted). Thus, to survive a motion to dismiss, the petitioners needed to allege sufficient facts to demonstrate that the Town substantially and unreasonably interfered with the use and enjoyment of their property.

Here, the writ alleges that the Town's actions of lowering the water level of Post Pond constituted a nuisance because it "converted in excess of one acre of submerged wetlands into mud in the Clay Brook Wetlands, and further drained other wetlands adjacent to Post Pond." Specifically, the writ alleges that "[l]owering the water level to 1.3 feet has converted over 15,000 square feet of submerged wetlands to mud along the waterfront of" Rogers' property and "has literally drained the water from . . . Rogers' shallow waterfront, compromising his access to water, decreasing the value of his property, and interfering with his enjoyment of his property." In addition, it alleges that Sears and the Sanders "own shallow wetland frontage on Clay Brook and Post Pond which has been similarly spoiled."

The trial court ruled that "[t]he facts in the petition could not show that the Town has appreciably and tangibly interfered with the petitioners' property interests." Relying upon *Fish v. Homestead Woolen Mills*, 134 N.H. 361 (1991), and *Whitcher v. State*, 87 N.H. 405 (1935), the trial court found that "[t]he Town is not legally obligated to maintain the pond at a level above the natural low-water mark"; nor do the petitioners have the "right to have the pond maintained above the natural low-water mark." Thus, the court ruled that the petitioners "could not prevail on a claim that the Town has interfered with their property rights by lowering the water level." The court further found that "[t]he petitioners have failed to identify how the Town's actions actually interfere with their property interests to a degree greater than that which would be expected in an organized society."

■ We begin our analysis by noting that only four of the twelve named petitioners are included within the petitioners' nuisance allegations; namely, Rogers, Sears, and the Sanders. Indeed, the petition alleges that the Town "has created and maintained a private nuisance; unreasonably interfering with *various* Petitioners' use and enjoyment of their properties." (Emphasis added.) It does not allege a private nuisance claim on behalf of *all* petitioners. Thus, we find that the petitioners failed to state a

private nuisance claim on behalf of the remaining eight petitioners, and the trial court did not err in dismissing the nuisance claim with respect to them.

■ With regard to Rogers, Sears, and the Sanders, we further find that the trial court did not err in dismissing their nuisance claim. These petitioners allege that the Town drained the water from their "shallow waterfront," thereby converting "submerged wetlands to mud," compromising their "access to water . . . and interfering with [their] enjoyment of [their] property." Taking these allegations of fact in the light most favorable to these four petitioners, we hold that they are insufficient to state a private nuisance claim against the Town. These allegations fall short of demonstrating that the Town's "activity substantially and unreasonably interfere[d] with the use and enjoyment of [their] property." *Cook*, 149 N.H. at 780 (quotation omitted). Merely converting certain submerged wetlands to mud, and lowering the water level of the pond, thereby allegedly compromising, in an undefined way, a littoral owner's access to the water, is insufficient to establish a private nuisance claim. *Cf. Heston v. Ousler*, 119 N.H. 58, 61 (1979) (upholding master's finding that defendants' dock constituted a nuisance where the dock completely obscured the plaintiffs' view of the water and "created a safety hazard for the plaintiffs when swimming within their own water space"); *Sundell v. Town of New London*, 119 N.H. 839, 843, 844 (1979) (littoral owners could recover for reduced enjoyment of lake waters resulting from pollution-caused algae blooms which "caused the water to become 'pea soup' in color, lose transparency, give off foul odors, leave slime on the shore and kill fish, which then wash[ed] up onto the shore"). Indeed, the petition does not allege that the affected area no longer constitutes wetlands. Likewise, the suggestion as made in the petition that the Town's actions adversely affected Rogers' use of "wood duck boxes" and his enjoyment of wildlife within the affected area, without more, is also insufficient to support a claim for private nuisance. "Mere annoyance or inconvenience will not support an action for a nuisance." 58 AM. JUR. 2D *Nuisances* § 88 (2002).

■ Although these petitioners also allege that the Town's actions decreased the value of their property, depreciation in land values "is ordinarily accorded little weight by the courts in nuisance cases on the ground that the law cannot generally protect landowners from fluctuating land values which is a risk necessarily inherent in all land ownership." *Robie v. Lillis*, 112 N.H. 492, 497 (1972). Accordingly, we conclude that the petitioners have failed to state a claim against the Town for private nuisance sufficient to withstand a motion to dismiss.

Sears, Rogers and the Sanders next argue that the trial court erred in dismissing their takings claim. The takings claim rests upon the same factual allegations as the nuisance claim.

■ We construe the takings claim as an inverse condemnation action. "Inverse condemnation occurs when a governmental body takes property in fact but does not formally exercise the power of eminent domain." *Sundell*, 119 N.H. at 845. It gives rise to an action for compensation. *Id.* We look to the individual circumstances of each case to determine whether there is an unconstitutional taking. *Allianz Global Risks U.S. Ins. Co. v. State of N.H.*, 161 N.H. 121, 124 (2010).

■ "[U]nder our law, 'property' refers to the right to 'use and enjoy' a thing, and is not limited to the thing itself." *Sundell*, 119 N.H. at 845. "Governmental action which substantially interferes with, or deprives a person of, the use of his property in whole or in part, may . . . constitute a taking, even if the land itself is not taken." *Id.* As with a nuisance claim, "the interference must be more than mere inconvenience or annoyance." *Id.* It "must be sufficiently direct, sufficiently peculiar, and of sufficient magnitude to cause us to conclude that fairness and justice, as between the State and the citizen, requires that the burden imposed be borne by the public and not by the individual alone." *Id.* (quotation and ellipsis omitted).

■ We hold that the writ's allegations are insufficient to state a claim for taking against the Town for the same reasons that they fail to state a nuisance claim: the allegations fail to support a claim that lowering the water level of Post Pond substantially interfered with or deprived the petitioners of the use of their property, in whole or in part. Merely alleging that the Town lowered the water level so as to "compromis[e] [their] access to water" and "interfere[] with [their] enjoyment of [their] property" is not sufficient to demonstrate that a taking of a constitutional dimension has occurred. *Cf. id.* at 846 (upholding inverse condemnation claim for injury to littoral property owners where "defendant's effluent-spawned algae invaded" waters "causing substantial interference with plaintiffs' use of th[e] space for bathing, swimming, boating, and other recreational purposes"). Therefore, the trial court did not err in dismissing the petitioners' takings claim.

The petitioners next assert that the trial court erred in failing to interpret their petition as including "a request for a declaratory judgment on the scope of [New Hampshire Administrative] Rule[,] Env-Wt 303.05(j) as it applies in relation to several State environmental statutes." The petitioners point to paragraphs 124 and 125 of their petition to support their argument. Paragraph 124 states:

In refusing to regulate the Town of Lyme's plan to drain wetlands and shrink Post Pond, DES cites Env-Wt 303.05(j), the regulatory provision that permits the removal of a beaver dam without a permit. DES-WETLANDS interprets the narrow exception for this usually minor activity described in 303.05(j), as preempting and negating the substance and intent of all of Env-Wt Sections 303.01, 303.02, 303.03, and 303.04. Such an interpretation of Section 303.05(j) is wrong under the accepted rules of interpretation.

Paragraph 125 provides:

The State of New Hampshire, through its Department of Environmental Services has violated RSA 482-A "The Wetlands Act" by classifying the Town of Lyme's plan to reduce the water level in the Post Pond Ecological Area as a project which does not require a permit, rather than as a major project, under Env-Wt sections 303.02.

We do not read these paragraphs as stating a request for declaratory relief. Under RSA 491:22, I (2010), "[a]ny person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive." The petitioners claim that "[b]ecause [their] property rights have been infringed upon in reliance on DES's erroneous interpretation of [Rule] 303.05(j), [they] have stated a genuine controversy with the State over the interpretation and scope of [Rule] 303.05(j), and their Petition should be regarded as a request for a declaratory judgment." We disagree.

"Where a [petitioner] seeks a declaratory judgment, he is not seeking to enforce a claim against the [respondent], but rather a judicial declaration as to the existence and effect of a relation between him and the [respondent]." *Benson v. N.H. Ins. Guaranty Assoc*, 151 N.H. 590, 593 (2004). The remedy of declaratory judgment affords relief from uncertainty and insecurity created by a doubt as to rights, status or legal relations existing between the parties. *Id.* at 593-94.

Here, the paragraphs upon which the petitioners rely are conclusory. They do not set forth a request for a judicial declaration regarding the interpretation and validity of the rule. While "we have traditionally regarded ill-pleaded requests for mandamus as petitions for declaratory judgment under RSA 491:22" in cases "[w]here a [petitioner] has made a showing that the issues raised express a genuine controversy with the defendant," *Guy J. v. Commissioner*, 131 N.H. 742, 747 (1989), a review of

the entire petition in this case evinces neither a request for declaratory relief nor a genuine controversy with the State with respect to Rule 303.05(j). Moreover, the mere use of the phrase "petition in equity" in the caption of the pleading is, in and of itself, insufficient to transform the underlying nature of this action, which is an action seeking mandamus relief, to one for declaratory judgment. Accordingly, as a matter of law, the petitioners fail to plead a claim entitling them to declaratory relief against the State with respect to the interpretation and validity of Rule 303.05(j).

 Finally, the petitioners "seek a declaration that the Town's conduct in installing beaver pipes and breaching beaver dams without a permit and without notice to [them] was a violation of [RSA] 201:9, [RSA] 482-A:3, [RSA] 483-B:5-b, and/or [RSA] 212-A:7." We conclude, however, that the petitioners waived this argument by failing to make more than this passing reference to it in their brief. *See Appeal of Manchester Transit Auth.*, 146 N.H. 454, 461 (2001).

*Affirmed.* ·

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.