# United States Court of Appeals
## For the First Circuit

No. 11-2075

MATTHEW K. DOWNING,

Plaintiff, Appellant,

v.

GLOBE DIRECT LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Ian J. McLoughlin, with whom Edward F. Haber, Norman M. Monhait, Rosenthal, Monhait & Goddess, PA, and Shapiro Haber & Urmy LLP were on brief, for appellant.
Joel A. Mintzer, with whom Stephen M. Ferguson, George Freeman, New York Times Company, Lisa Anne Furnald, Andrea K. Naef, Chad Michael Shandler, Richards, Layton & Finger, PA, and Robins, Kaplan, Miller & Ciresi were on brief, for appellee.

June 4, 2012

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL, Circuit Judge**.  In this putative class action brought by Matthew K. Downing alleging that Globe Direct LLC violated the Driver's Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721-25, the district court granted Globe Direct's motion on the pleadings based on Downing's failure to join the Commonwealth of Massachusetts, which the court found to be an indispensable party. Even if we were to assume that the district court abused its discretion in so finding, we affirm because we see no violation of the DPPA by Globe Direct.

## I. Facts & Background

On March 3, 2008, the Commonwealth of Massachusetts's Registry of Motor Vehicles (RMV) issued a "Request for Response" (RFR) for its "Registration Renewal Notice Program" (the program). The RFR sought proposals from outside contractors to perform the service of printing and sending to Massachusetts drivers their motor vehicle registration renewal notices along with advertisements. The stated goals of the program included assisting the RMV "in carrying out its registration renewal functions," "reduc[ing] RMV costs," and "potentially generat[ing] revenues to the Registry to further defray costs or help fund other RMV programs." The RFR elaborated that the program "w[ould] be funded by the solicitation and sale of commercial advertising by the Contractor for insertion into the Registry's Registration Renewal Notice mailing," and that "[a]dvertising revenues must be

-2-

sufficient to cover all motor vehicle registration renewal tasks that the Contractor will perform."  The RFR stated that "[t]he Contractor sh[ould] devote commercially reasonable efforts to generate additional revenues that potentially would enable the Registry to participate in the economic success of the program." Massachusetts retained the right to approve all advertising materials included in the mailings.  The RFR also noted that information that the RMV would provide to the contractor, including "name, address, date of birth, [and] license number" was "generally exempt from public disclosure" due to the DPPA and its Massachusetts analog, Mass. Gen. Laws ch. 4, § 7, cl. 26(n), and thus the contractor would need to "safeguard[] [the information] from unlawful public disclosure."

On April 29, 2008, Globe Direct, a wholly-owned subsidiary of the New York Times Company, submitted a bid in response to the RFR.  The bid stated that Globe Direct "underst[ood] and accept[ed] the entire RFR," and its proposal largely mirrored the language and structure of the RFR.  Globe Direct, presumably responding to the RFR's stated goal of raising revenue for the RMV, proposed to contribute 25% of its net margin to the RMV.  Massachusetts accepted Globe Direct's bid, and on August 12, 2008, the parties signed a contract, of which the RFR was considered a part and pursuant to which Globe Direct was to

serve as the contractor for the registration renewal program.[1]  The contract specified that Massachusetts would continue to exercise ownership over all personal data turned over, and that a violation of the DPPA or the equivalent Massachusetts privacy law would cause the contract to terminate.

Globe Direct began performing its contract duties in January 2009.  In May 2009, Downing, the owner of a 1998 Toyota who had provided his name and address to the RMV, received a registration renewal notice sent by Globe Direct.  The notice also included advertisements from Bath Fitter, Jiffy Lube, NTB, and AAA. Downing had never given his consent to the RMV to provide his personal information to third parties for purposes of solicitation or marketing.

---

[1] Massachusetts had previously entered into a substantially similar contract with Imagitas, Inc.  Imagitas was also sued for alleged violations of the DPPA based on its participation in Massachusetts's program, as well as similar programs in Florida, Minnesota, Missouri, New York, and Ohio; all the suits were consolidated into a multidistrict litigation case.  The district court first decided that the Florida scheme did not violate the DPPA, In re Imagitas, Inc., Drivers' Privacy Protection Act Litig. (Imagitas I), Nos. 3:07-md-2-J-32HTS & 3:06-cv-690-J-32HTS, 2008 WL 977333 (M.D. Fla. Apr. 9, 2008), and that decision was affirmed by the Eleventh Circuit, Rine v. Imagitas, Inc., 590 F. 3d 1215 (11th Cir. 2009).  The plaintiffs voluntarily dismissed the cases involving Minnesota and New York, and the district court found that Imagitas did not violate the DPPA as a result of its contracts with Massachusetts, Missouri, or Ohio.  In re Imagitas, Inc., Drivers' Privacy Protection Act Litig. (Imagitas II), Nos. 3:07-md-2-J-32JRK, 3:07-cv-389-J-32HTS, 3:07-cv-390-J-32HTS, 3:07-cv-391-J-32HTS, 3:07-cv-392-J-32HTS, 3:07-cv-393-J-32HTS, 3:07-cv-394-J-32HTS, 3:07-cv-395-J-32HTS, 2011 WL 6934127 (M.D. Fla. Dec. 30, 2011).

On September 18, 2009, Downing filed a putative class action complaint[2] on behalf of himself and other drivers who, without providing consent, had received advertisements from Globe Direct in addition to their registration renewal notices. See 18 U.S.C. § 2724 (providing a private right of action against a person[3] who violates the DPPA). Downing alleged that, by obtaining the names and addresses that Massachusetts car owners had provided to the RMV, and using that information to send out advertisements without the car owners' consent, Globe Direct had violated the DPPA. Downing sought as relief both a declaration that the contract between Massachusetts and Globe Direct violated the DPPA as well as a permanent injunction preventing Globe Direct from performing under the contract.

The DPPA lays out a general rule prohibiting disclosure of drivers' "personal information," id. § 2721(a)(1), which is defined by the statute as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address . . . , telephone number, and medical or disability information . . . ,"

---

[2] Downing initially filed his complaint in the United States District Court for the District of Delaware. Globe Direct filed a motion to transfer the case to the District of Massachusetts, which was granted on June 18, 2010; the case was transferred on July 6, 2010.

[3] The DPPA explicitly excludes states and state agencies from its definition of a "person." See 18 U.S.C. § 2725(2).

id. § 2725(3).  However, the DPPA provides fourteen "[p]ermissible uses" for which drivers' personal information may be disclosed. Id. §§ 2721(b)(1)-(14).  Disclosure is permissible "[f]or use by any government agency . . . in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."  Id. § 2721(b)(1). Disclosure is also permissible "[f]or bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains."  Id. § 2721(b)(12).  Downing alleges that Globe Direct's use of DPPA-protected personal information to send advertisements to Downing and those similarly situated constituted a DPPA violation because none of the "permissible uses" was applicable.

On February 2, 2010, Globe Direct answered the complaint, asserting various affirmative defenses, including qualified and sovereign immunity, and argued that Downing's claims were barred because Massachusetts was a necessary and indispensable party and that Downing's claims failed because Globe Direct's use of personal information was permitted by the DPPA pursuant to the government function exception.  See id. § 2721(b)(1).  On October 8, 2010, Globe Direct filed a motion for judgment on the pleadings, elaborating on the arguments listed in its answer.[4]

---

[4] On November 15, 2010, Downing cross-moved for judgment on the pleadings, arguing that Globe Direct's conduct violated the DPPA, and briefly addressed Globe Direct's Rule 19 arguments.  The

On August 25, 2011, the district court granted Globe Direct's motion on the pleadings, reaching only the issue of joinder. Downing v. Globe Direct LLC, 806 F. Supp. 2d 461, 470 (D. Mass. 2011). The district court first determined that Massachusetts was a necessary party under Federal Rule of Civil Procedure 19(a) due to its interests in its contract with Globe Direct, which would be "impaired as a practical matter" by its absence from the litigation. Id. at 467 (internal quotation marks omitted). However, the district court determined that it was not feasible to join Massachusetts because it (along with its agency, the RMV) enjoys Eleventh Amendment sovereign immunity, which Congress did not abrogate through the DPPA. Id. at 467-68. Finally, the district court found, after balancing the factors laid out in Federal Rule of Civil Procedure 19(b), that Massachusetts was an indispensable party, and therefore that the case had to be dismissed. Id. at 468-70. Downing timely appealed to this court.

## II. Discussion

We would normally review a district court's Rule 19 determination for abuse of discretion, Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 24 (1st Cir. 2010), but here, we can short-circuit the district court's analysis. Even were we to find an abuse of

district court denied the cross-motion as it pertained to Rule 19 and abstained from ruling on the portion of the cross-motion that related to the merits. Downing v. Globe Direct LLC, 806 F. Supp. 2d 461, 470 (D. Mass. 2011).

discretion on the joinder issue, which we need not do, we approve of the district court's result because we see no violation of the DPPA. Though the district court did not reach the substantive DPPA claim, because the parties fully briefed the issue before the district court, we have discretion to resolve that issue.[5] See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 16 (1st Cir. 1999); N.H. Motor Tranp. Ass'n v. Flynn, 751 F.2d 43, 52 (1st Cir. 1984).

The district court granted judgment on the pleadings for Globe Direct under Federal Rule of Civil Procedure 12(c). We treat a motion for judgment on the pleadings much like a Rule 12(b)(6) motion to dismiss. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive Globe Direct's motion, Downing's complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Elena v. Municipality of San Juan, 677 F.3d 1, 3 (1st Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Even taking all the complaint's well-pled allegations as true and viewing all other facts in a light most favorable to Downing, see id., we are

---

[5] We note that the question of whether a suit must be dismissed due to the absence of an indispensable party is one of equity, not one that calls into question our subject matter jurisdiction. See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 90 (2005) ("Rule 19 . . . address[es] party joinder, not federal-court subject-matter jurisdiction."); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1611 (3d ed. 2001 & Supp. 2012).

convinced that the registration renewal program and Globe Direct's participation therein falls under the government function exception to the DPPA's general rule of nondisclosure, see 18 U.S.C. § 2721(b)(1), and that Globe Direct therefore is not liable under the statute.

Downing concedes that if advertising were not a component of the program, the DPPA would allow Massachusetts to contract with a third party to send out its registration renewal notices, and to provide that third party with statutorily protected personal information, because sending out renewal notices is clearly a government function. The only question is whether the integration of advertising takes the registration renewal notice program outside of scope of the (b)(1) exception.[6]

Downing argues that because of the advertising inserted into the renewal notice mailings, a different exception, that under subsection (b)(12), fits more closely to this set of facts and that therefore subsection (b)(1) does not apply. The (b)(12) exception allows for the use of statutorily protected personal information for "bulk distribution for surveys, marketing or solicitations," but only "if the State has obtained the express consent of the person to whom such personal information pertains." Id.

---

[6] Subsection (b)(1) allows for the use of personal information by a state agency or a private entity acting on its behalf. See 18 U.S.C. § 2721(b)(1). Downing does not dispute that Globe Direct is acting on Massachusetts's behalf.

§ 2721(b)(12). Downing alleges, and we take as true here, that he did not consent to receive solicitations. Relying on the canon of statutory construction that the specific controls over the general, see HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981), Downing argues that Globe Direct has violated the DPPA's general rule against disclosure by failing to meet the requirements of subsection (b)(12). This argument is off the mark, however, as we do not find that (b)(12) is more specific than (b)(1); each subsection merely governs different, although sometimes overlapping, circumstances. See Rine v. Imagitas, Inc., 590 F.3d 1215, 1225-26 (11th Cir. 2009) (finding HCSC-Laundry inapplicable under like circumstances because "[s]ubsection (b)(1) applies to a situation not addressed by subsection (b)(12) and vice versa"); see also Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992) (allowing overlapping statutory provisions to be effective so long as there was no "positive repugnancy" between them).

The structure of the DPPA supports the idea that one permissible use does not define or control another. Each "permissible use" under subsection (b) is a specific carve-out from liability. Once a person's activities are deemed to fall within one of the carve-outs, subsection (a)'s general rule of nondisclosure no longer applies. See 18 U.S.C. § 2721(a)(1) ("A State department of motor vehicles . . . shall not knowingly disclose . . . personal information . . . except as provided in

-10-

subsection (b). . . ."). Each "permissible use" under subsection (b) is like a key to unlock a door through which a person may go to escape DPPA liability. So long as Globe Direct may unlock the (b)(1) door, the fact that they may or may not possess the key to the (b)(12) door is irrelevant to our inquiry.

But we still must answer the question of whether the program is permissible under subsection (b)(1).[7] Downing argues that the registration renewal program encompasses two distinct functions: registration renewal, which he concedes falls under subsection (b)(1) as a government function, and a separate advertising function, which he argues is not permissible. Downing urges us to follow the Third Circuit's finding in Pichler v. UNITE, 542 F.3d 380 (3d Cir. 2008), cert. denied, 129 S. Ct. 1662 (2009), that "[t]he [DPPA] contains no language that would excuse an impermissible use merely because it was executed in conjunction with a permissible purpose," id. at 395. We are not persuaded, however, that the advertising component of the program renders Globe Direct liable.

---

[7] We note that the government function exception has been interpreted quite broadly. See, e.g., McQuirter v. City of Montgomery, Ala., No. 2:07-CV-234-MEF, 2008 WL 401360, at *6 (M.D. Ala. Feb. 12, 2008) (holding that release by a police department of a suspect's driver's license photograph to media outlets was permissible under (b)(1) due to serving law enforcement functions including "appri[sing] the public of risks created by dangerous suspects at large" and acting as a deterrent to criminal activity).

We do not think there is a discrete separation between the advertising component of the program and the undisputedly legitimate government function of sending out registration renewal notices. According to the RFR, in addition to assisting the RMV "in carrying out its registration renewal functions," the program's stated goals included "reduc[ing] RMV costs" as well as "potentially generat[ing] revenues to the Registry to further defray costs or help fund other RMV programs"; the RFR elaborated that the means of achieving these goals would be through advertising inserts.

This situation is unlike that in Pichler, where the primary (and impermissible) purpose of collecting the statutorily protected personal information was union organizing, which the court found the union had "attempt[ed] to mask . . . behind the veil of a [permissible and severable] litigation purpose." Id. at 396. Here, the advertising function is inextricably linked to the proper government functions of registration renewal and increasing the availability of funds for RMV programs. We think that the integration of the advertising into the structure of the program renders that advertising a part of the government function exempted from the statute's reach under subsection (b)(1).

We are not alone in this line of analysis. Post-Pichler, both the Fourth and Eleventh Circuits have declined to impose DPPA liability where solicitation or advertising was part and parcel of

-12-

a permissible use of statutorily protected information.  See Maracich v. Spears, 675 F.3d 281, 293-94 (4th Cir. 2012) ("[B]ecause the solicitation was entirely consistent with state law, was integral to, and was, indeed, inextricably intertwined with the [defendants'] permissible use of the Buyers' personal information pursuant to the litigation exception, the Buyers' claim fails as a matter of law."); Rine, 590 F.3d at 1223 (holding, in a factual situation similar this case, that "[f]unding public programs through commercial advertising is a legitimate agency function"); see also In re Imagitas, Inc., Drivers' Privacy Protection Act Litig. (Imagitas II), Nos. 3:07-md-2-J-32JRK, 3:07-cv-389-J-32HTS, 3:07-cv-390-J-32HTS, 3:07-cv-391-J-32HTS, 3:07-cv-392-J-32HTS, 3:07-cv-393-J-32HTS, 3:07-cv-394-J-32HTS, 3:07-cv-395-J-32HTS, 2011 WL 6934127, at *3-4 (M.D. Fla. Dec. 30, 2011) (upholding both a previous iteration of the Massachusetts registration renewal notice program under subsection (b)(1) because it was a legitimate government function "to offset costs through commercial advertising," as well as upholding similar programs in Missouri and Ohio); cf. Statement of Interest of the United States at 16-19, In re Imagitas, Inc., Drivers' Privacy Protection Act Litig. (Imagitas I), Nos. 3:07-md-2-J-32HTS & 3:06-cv-690-J-32HTS, 2008 WL 977333 (M.D. Fla. Apr. 9, 2008) (laying out the government's interpretation that raising revenue through advertising, where statutorily protected personal information is

not disclosed to the advertiser, is a legitimate government function under subsection (b)(1)).

Massachusetts law leaves ample room for the RMV to create and engage in the program as a proper agency function under subsection (b)(1). See Rine, 590 F.3d at 1223-24 (examining whether a similar program was consistent with Florida law); Imagitas II, 2011 WL 6934127, at *3-4 (examining whether similar programs in Massachusetts, Missouri, and Ohio were consistent with state law). Massachusetts law allows the Commonwealth to enter into service contracts for purposes "needed by the various executive and administrative departments and for other activities of the commonwealth," see Mass. Gen. Laws ch. 30, §§ 51-52, the process through which Massachusetts and Globe Direct entered into their contract. Additionally, Massachusetts law explicitly allows for the use of advertising to raise revenue in analogous transportation contexts. See Mass. Gen. Laws ch. 81, § 7C (permitting advertisements on state highway property where revenue is credited to the state highway fund); Mass. Gen. Laws ch. 161A, § 3(n) (permitting advertisements in Massachusetts Bay Transportation Association facilities). As there is no conflict with state law, we are content to agree with the other courts that have addressed nearly identical factual situations, and hold that Massachusetts's program is a legitimate government function of the

RMV that is covered by subsection (b)(1). See Rine, 590 F.3d at 1223-24; Imagitas II, 2011 WL 6934127, at *3-4.

Downing makes much of the fact that the Supreme Court has approved of the DPPA as a means to "regulate[] the universe of entities that participate as suppliers to the market for motor vehicle information," Reno v. Condon, 528 U.S. 141, 151 (2000), and asserts that this necessitates a finding that Globe Direct is liable under the statute. But we think that cuts against his argument. Under this scheme, there is no sale of any statutorily protected personal information, and neither Massachusetts nor Globe Direct supplies the market with such information.[8] The only disclosure of personal information is one that Downing concedes is appropriate: from Massachusetts to its contractor, Globe Direct, so that Globe Direct can send out the registration renewal notices. Globe Direct, at Massachusetts's behest, then seeks out advertisers and encloses their materials with the renewal notices, but never discloses any personal information to those advertisers. Though it is perhaps contrary to the "'spirit' of the DPPA" to include advertising inserts,[9] Imagitas I, 2008 WL 977333, at *15, there is

_____

[8] This is in contrast to situations where a state might sell drivers' personal information in bulk to direct marketers, which was one of Congress's concerns when passing the DPPA. See Reno, 528 U.S. at 143-44 (citing legislative history).

[9] While limiting the access of direct marketers to drivers' personal information was one motivation behind the DPPA, see, e.g., 139 Cong. Rec. S15,764 (daily ed. Nov. 16, 1993) (statement of Sen. John Warner) (noting that one purpose of the statute was to protect

-15-

no improper disclosure or use of statutorily protected personal information.  Congress explicitly included an exception to the DPPA's general rule of nondisclosure for government functions, including those performed by contractors for state agencies, and Massachusetts was careful to limit the disclosure and use of the personal information that the statute protects.  The fact that no one other than the RMV and its contractor, Globe Direct, ever possesses the personal information, combined with the integrated goals of the program, including mailing the renewal notices as well as cutting the costs of and raising revenue for RMV programs, leaves us convinced that the program is a permissible government function under subsection (b)(1).  And because the program is a permissible means for the use of personal information, Globe Direct cannot be liable.  See 18 U.S.C. § 2724(a) ("A person who . . . uses personal information, from a motor vehicle record, <u>for a</u>

---

individuals from the sale of personal information for profit by state agencies to marketers), the main purpose of the statute was to prevent incidences of stalking and violence enabled by access to personal information that is stored by motor vehicle registries, <u>see, e.g.</u>, Protecting Driver Privacy: Hearing on H.R. 3365, the Driver's Privacy Protection Act of 1993, Before the Subcomm. on Civil and Const. Rights of the H. Comm. on the Judiciary, 103d Cong. (1994) (statement of Rep. James P. Moran); 140 Cong. Rec. H2,526-27 (daily ed. Apr. 20, 1994) (statement of Rep. Porter Goss) (noting that the bill was in response to the murder of an actress by a stalker and that "the intent of the bill is simple and straightforward: We want to stop stalkers from obtaining the name and address of their pray before another tragedy occurs"); 139 Cong. Rec. S15,762-63 (daily ed. Nov. 16, 1993) (statement of Sen. Orrin Hatch) (opposing the bill because the crime bill "already does much to combat stalking.").

<u>purpose not permitted</u> . . . shall be liable . . . .) (emphasis added).

### III. Conclusion

Because we agree that judgment for Globe Direct is proper, as Downing cannot state a claim under the DPPA, <u>we affirm</u> the ruling of the district court.