NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-0256


JONATHAN WOLFGRAM

v.

NEW HAMPSHIRE DEPARTMENT OF SAFETY

Argued: November 10, 2015
Opinion Issued: April 29, 2016


Patrick M. Carron, of Concord, by brief and orally, for the petitioner.


Joseph A. Foster, attorney general (Matthew T. Broadhead, attorney, by memorandum of law and orally), for the respondent.


BASSETT, J. The petitioner, Jonathan Wolfgram, appeals an order of the Superior Court (McNamara, J.) affirming a decision by the respondent, the New Hampshire Department of Safety (DOS), to retain notations on the petitioner's motor vehicle record referring to his certification and decertification as a habitual offender, despite the fact that the convictions that led to his habitual offender certification had been annulled. The petitioner argues that, because the habitual offender notations reveal the fact of his annulled criminal convictions, allowing DOS to retain the notations on his motor vehicle record defeats the purpose of the annulment statute, RSA 651:5 (Supp. 2015). We reverse and remand.

The parties stipulated to the following facts in the trial court. Between 2002 and 2007, the petitioner was convicted of multiple motor vehicle offenses. Based upon these convictions, DOS certified the petitioner as a habitual offender and revoked his license and operating privileges for four years. See RSA 259:39 (2014) (defining habitual offender as any person "whose record, as maintained in the office of the division, shows that such person has accumulated convictions" specified by the statute "within a 5-year period"). In 2011, the petitioner requested to be decertified as a habitual offender. DOS granted his request, reissued the petitioner's driver's license, and placed him on "probationary status" until November 2016.

Between 2012 and 2013, the petitioner obtained "approximately seventeen" annulments of various motor vehicle convictions, including those that had resulted in his habitual offender certification. DOS removed these annulled convictions from the petitioner's motor vehicle record. In 2014, the petitioner requested a hearing at DOS, seeking to have "all notations regarding [his] past Habitual Offender Certification and Decertification" removed from his motor vehicle record. He argued that, given that the convictions underlying his habitual offender status had been annulled, "[l]eaving the notations regarding [his] habitual offender status [on his record] defeat[ed] [the] purpose of the annulment statute." Following a hearing, DOS denied the petitioner's request, explaining:

> While each court has acted formally to invalidate each of its subject convictions, the State Department of Safety has never formally acted to invalidate its [habitual offender] certification action. As a result, as that action and its related actions were valid at the time and have not been annulled, notations of those actions are not in error, and they must remain on the [petitioner's] record.

The petitioner's request for reconsideration was denied, and he appealed to the superior court.

The trial court affirmed the decision by DOS to retain the habitual offender notations on the petitioner's motor vehicle record, concluding that it was "consistent with the plain language" of RSA 651:5, which provides, in part, that annulled convictions "may be counted toward habitual offender status," RSA 651:5, X(a). The trial court also observed that keeping the notations on the petitioner's motor vehicle record was "consistent with the entire statutory scheme relating to Habitual Offenders," which empowers DOS to protect the public from dangerous drivers by denying habitual offenders the privilege of driving on public roads. See RSA 262:18-:26 (2014) (habitual offender policy and procedure). Finally, the trial court noted, because the habitual offender law provides that the order finding that a person is a habitual offender "shall become part of the record of the division of motor vehicles," RSA 262:19, III, the

2

habitual offender notations properly continued to be part of the petitioner's motor vehicle record. The petitioner's motion for reconsideration was denied, and this appeal followed.

On appeal, the petitioner argues that, because the habitual offender notations reveal the fact of criminal convictions that have been annulled, the trial court erred by allowing DOS to retain the notations on his motor vehicle record. He asserts that the habitual offender notations must be removed in order to be consistent with the plain language and the purpose of the annulment statute. Although the petitioner acknowledges that DOS "has legitimate business and record keeping purposes" for maintaining a record of his annulled convictions and his prior certification as a habitual offender, he argues that this should not be done on his "official" motor vehicle record, which is "used by many landlords [and] employers" and "may be used in court proceedings and introduced as evidence in court matters." The petitioner also raises a constitutional challenge to the trial court's order. DOS counters that, because "the habitual offender designation is not a record of a criminal proceeding that is subject to annulment," DOS is not required to remove the notations from the petitioner's record. DOS further asserts that the plain language of the annulment statute "expressly exempt[s] habitual offenders of the motor vehicle laws from receiving [the] privilege[s]" provided to persons with annulled convictions. Finally, DOS argues that removing the notations from the petitioner's official motor vehicle record would prevent DOS from upholding its statutory obligation to keep a record of habitual offender certifications. <u>See</u> RSA 262:19.

The issue on appeal presents a question of statutory interpretation. We review matters of statutory interpretation <u>de novo</u>. <u>JMJ Properties, LLC v. Town of Auburn</u>, 168 N.H. 127, 130 (2015). "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." <u>Choquette v. Roy</u>, 167 N.H. 507, 517 (2015) (quotation omitted). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." <u>Id</u>. (quotation omitted). "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." <u>Id</u>. (quotation omitted). We will not construe a statute in a way that would render it "a virtual nullity." <u>Appeal of Wilson</u>, 161 N.H. 659, 664 (2011). "We construe statutes so as to effectuate their evident purpose and to avoid an interpretation that would lead to an absurd or unjust result." <u>State v. Bulcroft</u>, 166 N.H. 612, 614 (2014). "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice." <u>Id</u>.

The purpose of the annulment statute is to reduce the collateral consequences of a criminal conviction and "to afford an offender . . . a chance to start anew without this stigma in his records." <u>State v. Roe</u>, 118 N.H. 690,

3

692-93 (1978) (quotation omitted). The "record of arrest, conviction and sentence of any person" that fits within the specific categories set forth in the statute "may be annulled by the sentencing court at any time in response to a petition for annulment . . . if in the opinion of the court, the annulment will assist in the petitioner's rehabilitation and will be consistent with the public welfare." RSA 651:5, I. Pursuant to RSA 651:5, X(a), "[t]he person whose record is annulled shall be treated in all respects as if he or she had never been arrested, convicted or sentenced." We have previously recognized that "[t]he language 'in all respects' cannot be read out of the statute or interpreted to encompass any less than the word 'all' requires." Brown v. Brown, 133 N.H. 442, 445 (1990). However, RSA 651:5, X(a) provides two narrow exceptions to this "otherwise unequivocal language," id. — "upon conviction of any crime committed after the order of annulment has been entered, the prior conviction may be considered by the court in determining the sentence to be imposed, and may be counted toward habitual offender status under RSA 259:39." RSA 651:5, X(a).

The habitual offender law seeks to "provide maximum safety for all persons who travel or otherwise use the ways of the state" and to "discourage repetition of criminal acts." RSA 262:18, I, III. The habitual offender law grants DOS broad authority to impose restrictions on habitual offenders. See RSA 262:18-:26. DOS may "impose increased and added deprivation of the privilege to drive motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws." RSA 262:18, III. DOS also has discretion to determine whether to restore a habitual offender's driving license and operating privileges, and it prescribes the terms and conditions by which a habitual offender may regain his driving privileges. See RSA 262:24 (DOS "may restore" habitual offender's driving privileges "upon such terms and conditions as the director may prescribe" (emphasis added)); N.H. Admin. Rules, Saf-C 206.01-207.07 (DOS rules governing habitual offenders). DOS is specifically required by statute to keep a copy of the order certifying a person as a habitual offender as "part of the record of the division of motor vehicles." RSA 262:19, III.

Because the two statutes at issue in this case impact the treatment of persons designated as habitual offenders, we construe them "so that they will lead to reasonable results and effectuate the legislative purpose of the statutes." Holt v. Keer, 167 N.H. 232, 241 (2015) (quotation omitted); see State v. Patterson, 145 N.H. 462, 465 (2000) (construing statutes dealing with similar subjects "so that they lead to reasonable results and do not contradict each other" (quotation omitted)). As a preliminary matter, we address DOS's argument that, because the habitual offender certification is a civil designation, see State v. Fitzgerald, 137 N.H. 23, 28 (1993), it is not subject to annulment pursuant to RSA 651:5. We agree with DOS that, in and of itself, the habitual offender certification is not subject to annulment. Nonetheless, because the habitual offender notations on the petitioner's motor vehicle record reveal the

4

fact of his prior convictions, they are inextricably linked with the petitioner's criminal history.

By definition, a "[h]abitual offender" has "accumulated convictions." RSA 259:39 (quotation omitted). Consequently, just as "the fact of an annulment also necessarily discloses the fact of a conviction," Panas v. Harakis & K-Mart Corp., 129 N.H. 591, 610 (1987), a habitual offender designation necessarily discloses the fact of more than one prior criminal conviction. In New Hampshire, a person's motor vehicle record is available, upon request and with permission of the individual whose record is requested, to members of the public, including potential employers and insurance agencies. See RSA 260:14 (Supp. 2015) (describing how motor vehicle records may be requested and released). Accordingly, if the habitual offender notations remain on the petitioner's motor vehicle record, any person who receives the record would be able to ascertain that he had prior convictions. We agree with the petitioner that this would undermine the purpose of the annulment statute and lead to an unjust result. See Bulcroft, 166 N.H. at 614 ("We construe statutes so as to . . . avoid an interpretation that would lead to an absurd or unjust result.").

DOS next argues that, because RSA 651:5, X(a) provides that annulled convictions "may be counted toward habitual offender status," habitual offenders are "expressly exempted . . . from receiving [the] privilege" of being "treated in all respects as if [they] had never been arrested, convicted or sentenced." (Quotation omitted.) See RSA 651:5, X(a). We disagree. RSA 651:5, X(a) specifies that previously annulled convictions "may be counted toward habitual offender status" only "upon conviction of any crime committed after the order of annulment has been entered." We interpret this language to mean that DOS may consider an annulled conviction when determining whether a person qualifies for certification as a habitual offender. To certify someone as a habitual offender, DOS must determine the number of qualifying convictions that the person has accumulated in a five-year period. See RSA 259:39. Thus, the annulled convictions are relevant in this context. The exception in RSA 651:5, X(a) regarding habitual offender status allows for this necessary and limited consideration of annulled convictions. It does not exempt habitual offenders from the protections provided by the annulment statute, nor does it require a habitual offender's annulled convictions or habitual offender status to remain on a publicly available motor vehicle record.

Our interpretation is consistent with the other exception in RSA 651:5, X(a), which provides that a court may not consider an individual's annulled conviction except that "upon conviction of any crime committed after the order of annulment has been entered," it may be considered "in determining the sentence to be imposed." This exception allows for the limited consideration of annulled convictions in a context in which prior convictions may be relevant — sentencing for a subsequently committed crime. Thus, these exceptions reflect the fact that, although annulment creates a legal fiction that a person has

5

never been arrested, convicted, or sentenced, prior convictions remain a historical reality and can be considered in limited circumstances. See Lovejoy v. Linehan, 161 N.H. 483, 487 (2011) (observing that treating annulled conviction "as if it had never occurred" is "conceptually impossible" and "contrary to the clear language of" RSA 651:5, which "describes various circumstances in which the annulled record can be used" (quotation omitted)).

Nonetheless, DOS argues that, because it has a statutory obligation to maintain a record of the certification of habitual offenders as "part of the record of the division of motor vehicles," RSA 262:19, III, the petitioner's habitual offender status must remain on his motor vehicle record. The petitioner counters that DOS may keep a record of his habitual offender certification and decertification, "just not on [his] official motor vehicle driving record." He likens DOS to other state prosecuting agencies that may not "keep track of annulled criminal convictions on a citizen's official criminal record because such annulled convictions can only be considered by Courts for purposes of sentencing." See RSA 651:5, X(a). We agree with the petitioner.

Although RSA 262:19, III provides that the order certifying a habitual offender "shall become part of the record of the division of motor vehicles," it does not require that, after the underlying convictions have been annulled, the notations referring to the habitual offender certification and decertification be included on the publicly accessible motor vehicle record. Because motor vehicle records can be accessed by members of the public, see RSA 260:14, interpreting RSA 651:5 to require the removal of annulled convictions from a motor vehicle record but not the removal of habitual offender notations that reveal the fact of those annulled convictions would run counter to the plain language of the annulment statute and undermine the purpose of the statutory scheme. Thus, construing the annulment statute together with the habitual offender law, we conclude that, because the petitioner is a decertified habitual offender and the convictions underlying his habitual offender certification have been annulled, DOS must maintain its record of his habitual offender certification status in such a way that the information is not accessible by members of the public. This places no more a burden on DOS than the burden imposed on other agencies that are required to keep confidential information separate from publicly available information. See, e.g., Duchesne v. Hillsborough County Attorney, 167 N.H. 774, 781 (2015) (describing procedure, as set forth by statute, for distinguishing between material in police personnel file that may be disclosed and material that must remain confidential).

Accordingly, we conclude that the trial court erred when it upheld the decision by DOS to maintain notations referring to the petitioner's habitual offender certification and decertification on his publicly accessible motor vehicle record. To the extent that the petitioner argues that the trial court erred by not ordering DOS to remove from his motor vehicle record what he characterizes as references to annulled criminal convictions — but as to which

there is no evidence that the references are, in fact, to annulled convictions —
we decline to address this argument because the petitioner did not raise it
before DOS, either in his initial request or in his motion for reconsideration.
See Appeal of Morrissey, 165 N.H. 87, 98 (2013) (concluding that issue not
raised in initial appeal to Department of Environmental Services Wetlands
Council or in motion for reconsideration not preserved for appellate review).
Because the petitioner prevails on his statutory claim, we need not address his
constitutional argument.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.