# United States Court of Appeals
## For the First Circuit

No. 24-1086

JODI BOURGEOIS,

Plaintiff, Appellant,

v.

THE TJX COMPANIES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Paul J. Barbadoro, U.S. District Judge]

No. 24-1093

PAMELA SMITH,

Plaintiff, Appellant,

v.

HOME DEPOT U.S.A., INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Landya B. McCafferty, U.S. District Judge]

No. 24-1150

JODI BOURGEOIS,

Plaintiff, Appellant,

v.

THE GAP, INC., et al.

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Landya B. McCafferty, U.S. District Judge]

---

Before

Gelpí, Lynch, and Montecalvo,
Circuit Judges.

---

Philip L. Fraietta, with whom Matthew A. Girardi, Bursor & Fisher, P.A., Benjamin Thomas King, and Douglas Leonard & Garvey PC were on brief, for appellants Jodi Bourgeois and Pamela Smith.

P. Craig Cardon, with whom Benjamin O. Aigboboh and Sheppard Mullin Richter & Hampton LLP were on brief, for appellee The TJX Companies, Inc.

S. Stewart Haskins II, with whom I. Cason Hewgley IV and King & Spalding LLP were on brief, for appellee Home Depot U.S.A., Inc.

Michael D. Roth, with whom Anne M. Voigts and King & Spalding LLP were on brief, for appellees The Gap, Inc., Old Navy, LLC, Banana Republic, LLC, and Athleta, LLC.

---

February 14, 2025

---

**GELPÍ**, <u>Circuit Judge</u>. These consolidated appeals require us to decide, under New Hampshire's rules of statutory interpretation, whether claims have been stated on the facts alleged of violations of sections IX(a) and (b) of the New Hampshire Driver Privacy Act ("NH DPA"), New Hampshire Revised Statutes Annotated ("RSA") section 260:14. The United States District Court for the District of New Hampshire found they did not and dismissed. We affirm.

## I. BACKGROUND

### A. Procedural History

This action arises from three consolidated appeals: No. 24-1086 (<u>Bourgeois</u> v. <u>The TJX Cos., Inc.</u>, No. 23-cv-354-PB (D.N.H. Jan. 5, 2024)); No. 24-1093 (<u>Smith</u> v. <u>Home Depot U.S.A., Inc.</u>, 707 F. Supp. 3d 145 (D.N.H. 2023)); and No. 24-1150 (<u>Bourgeois</u> v. <u>The Gap, Inc.</u>, No. 23-cv-394-LM-TSM, 2023 WL 9689611 (D.N.H. Dec. 20, 2023)). All of the complaints in the underlying three cases were "materially identical" and were filed within a three-month span.

Plaintiff-Appellant Smith brought her putative class action against Home Depot in New Hampshire Superior Court on April 10, 2023. Home Depot removed Smith's action to the District of New Hampshire, invoking jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d)(2). Home Depot then brought a motion to dismiss, which the district court granted, holding that Plaintiff-Appellant Smith had failed to state a claim

- 3 -

for violation of the NH DPA under the relevant sections of the statute.

Following the dismissal of Smith's complaint, the district courts in TJX and The Gap followed suit, dismissing the complaints in those cases for the "same reasons" the complaint was dismissed in Home Depot. These timely appeals followed. On March 28, 2024, this court granted Plaintiffs-Appellants' motion to consolidate the appeals. We thus address all of Plaintiffs-Appellants' claims together.

## B. Factual Background

We draw the following factual summary from the allegations in the complaints. See Ouch v. Fed. Nat'l Mortg. Ass'n, 799 F.3d 62, 64 (1st Cir. 2015) (citing Lister v. Bank of Am., 790 F.3d 20, 22 (1st Cir. 2015)). Plaintiffs-Appellants (or the "Customers") bring allegations against Defendants-Appellees: The TJX Companies, Inc.; Home Depot U.S.A., Inc.; The Gap, Inc.; Old Navy, LLC; Banana Republic, LLC; and Athleta, LLC (collectively, the "Retailers"). Each of the Customers shopped at one of the Retailers' stores and subsequently sought to return items to the respective store. The Customers did not present receipts for their purchases when seeking to make returns, so the

Retailers required presentation of the Customers' driver's licenses in order to effectuate said returns.[1]

After receiving the Customers' driver's license information, the Retailers transmitted that information to a third party, The Retail Equation ("TRE"). TRE is an entity that "works with retailers to warn consumers when their return . . . violate[s] store policies." It does this by providing software to analyze customers' shopping habits in order to determine whether a particular transaction may be fraudulent.

Under these facts, the Customers bring two counts, both of which arise under New Hampshire RSA section 260:14, the "NH DPA." The Customers allege the Retailers violated that Act by disclosing the Customers' driver's license information to TRE. The Customers allege both that they were not aware their driver's

---

[1] Generally, when customers seek to make returns without a receipt -- known as "non-receipted returns" -- the Retailers require said customers to provide a driver's license. After presentation of a driver's license, the Retailers offer in-store credit, stored on "value cards," for the non-receipted return. A customer also must present a driver's license when purchasing items with value cards.

licenses would be disclosed to TRE and that they did not consent to said disclosure.

## II. DISCUSSION

### A. Legal Standards

We review the "grant of a motion to dismiss de novo, accepting well-pled facts as true and drawing all inferences in favor of the non-moving party." Rivera-Rosario v. LSREF2 Island Holdings, Ltd., 79 F.4th 1, 4 (1st Cir. 2023) (quoting Triangle Cayman Asset Co. v. LG & AC, Corp., 52 F.4th 24, 32 (1st Cir. 2022)). "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). Moreover, "we may affirm the dismissal 'on any basis available in the record.'" Yan v. ReWalk Robotics Ltd., 973 F.3d 22, 30 (1st Cir. 2020) (quoting Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013)).

In determining whether the claims are plausible, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández, 640 F.3d at 12). We "take the complaint's well-pled (i.e., non-conclusory,

- 6 -

non-speculative) facts as true . . . and see if they plausibly narrate a claim for relief." Id. (citing Ocasio-Hernández, 640 F.3d at 12). This is a "context-specific" approach that requires us "to draw on" our "judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

"We interpret [the NH DPA's] scope by applying the rules of statutory construction that the state's highest court would follow." IMS Health Inc. v. Mills, 616 F.3d 7, 25 (1st Cir. 2010) (vacated on other grounds) (citations omitted). In interpreting a state's statutes, "we look to the pronouncements of a state's highest court in order to discern the contours of that state's law." Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 7 (1st Cir. 2022) (quoting González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)). Where, as here, the New Hampshire Supreme Court has not ruled on the issues before us, "we must anticipate how the court would rule if it were deciding the questions presented." See id. (citing González Figueroa, 568 F.3d at 318). In this regard, "our task is to ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ." Connelly v. Hyundai Motor Co., 351 F.3d 535, 539 (1st Cir. 2003) (quoting Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000)); see Kathios v. Gen. Motors Corp., 862 F.2d 944, 949 (1st Cir. 1988) ("Our function is not to formulate a tenet which we, as free

agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow." (citing Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987))).

## B. The Federal Driver's Privacy Protection Act

In DeVere v. Att'y Gen., 781 A.2d 24 (N.H. 2001), the New Hampshire Supreme Court found that "the State legislature enacted the Driver Privacy Act to comply with the [federal Driver's Privacy Protection Act]." Id. at 26. Accordingly, we briefly rehearse the history of the federal Driver's Privacy Protection Act of 1994 ("DPPA"). See 18 U.S.C. §§ 2721–2725. "The enactment of the DPPA responded to at least two concerns over the personal information contained in state motor vehicle records." Maracich v. Spears, 570 U.S. 48, 57 (2013). "The first was a growing threat from stalkers and criminals who could acquire personal information from state [departments of motor vehicles ("DMVs")]." Id. The second concern was that many States were selling information contained in motor vehicle records to individuals and businesses, producing "significant revenues for the States." See Reno v. Condon, 528 U.S. 141, 143-44 (2000) (citing Travis v. Reno, 163 F.3d 1000, 1002 (7th Cir. 1998)). In order to rectify these issues, the DPPA was enacted to "bar the State from disclosing personal information obtained from DMV records without the

- 8 -

individual's consent." Fontanez v. Skepple, 563 F. App'x 847, 849 (2d Cir. 2014) (unpublished) (citations omitted).

In DeVere, the New Hampshire Supreme Court stated that, like the federal Congress, the New Hampshire Legislature was similarly concerned that "access to personal information contained in motor vehicle records made domestic violence and stalking victims vulnerable to their assailants." DeVere, 781 A.2d at 26 (citing Hearing on HB 1508-FN Before the S. Comm. on Transp. (Apr. 3, 1996)). While in a few passages the text of the NH DPA varies from the federal act and is broader, those differences do not assist the Customers' arguments, for the reasons we explain. The Customers argue that, unlike the DPPA, which applies specifically to disclosures by "[a] state department of motor vehicles, and any officer, employee, or contractor thereof," 18 U.S.C. § 2721(a), sections IX(a) and IX(b) of the NH DPA apply broadly to disclosures by "[a] person."

In essence, the DPPA regulates the "authority of state motor vehicle departments to disclose information contained in their records," generally prohibiting states from disclosing personal information obtained in connection with a motor vehicle record. See DeVere, 781 A.2d at 26 (citing 18 U.S.C. § 2721(a)). However, the DPPA also provides fourteen permissible uses "for which drivers' personal information may be disclosed." Downing v. Globe Direct LLC, 682 F.3d 18, 21 (1st Cir. 2012) (citing 18 U.S.C.

- 9 -

§ 2721(b)(1)-(14)).  The DPPA imposes a civil penalty of not more than $5,000 per day on any State DMV with a policy or practice of substantial noncompliance with its provisions.  18 U.S.C. § 2723(b).  In Reno v. Condon, the Supreme Court emphasized the "DPPA's ban on disclosure of personal information does not apply if drivers have consented to the release of their data."  528 U.S. at 144.

### C. The New Hampshire Driver Privacy Act

To comply with the DPPA, the New Hampshire legislature enacted the NH DPA in 1996.  DeVere, 781 A.2d at 26 (citations omitted).  The NH DPA provides: "motor vehicle records" shall "not be public records or open to the inspection of any person."  RSA § 260:14, II(a).  It also provides limited exceptions to that general rule and provides the procedures for gaining access to "motor vehicle records."  See RSA § 260:14, III, IV(a).

The Customers bring suit under sections IX(a) and IX(b) of the NH DPA -- the sections that describe when a person is guilty of either a misdemeanor or a felony under the statute.  See RSA § 260:14, IX.  "Although both subparagraphs speak in terms of criminal liability, another provision of the statute states that 'any person aggrieved by a violation of this section may bring a civil action.'"  Ives v. Bath & Body Works, LLC, 731 F. Supp. 3d 254, 259 (D.N.H. 2024) (quoting RSA § 260:14, X).  "A successful plaintiff may obtain the greater of actual damages or statutory

- 10 -

damages of $2,500 'for each violation,' as well as attorneys' fees and costs." Id.

The district court concluded that "a driver's license in the possession of the person to whom it pertains" is not a "motor vehicle record" under the NH DPA. Smith, 707 F. Supp. At 153.

With this background understanding, we turn to the Customers' specific allegations.

**1. Count II: Section IX(b) of the NH DPA**

In DeVere, the New Hampshire Supreme Court interpreted the NH DPA, adopting the approach we take here in "consider[ing] the statute as a whole." DeVere, 781 A.2d at 27. Our interpretation of "New Hampshire law must 'first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.'" United States v. Howe, 736 F.3d 1, 3 (1st Cir. 2013) (quoting State v. Dor, 75 A.3d 1125, 1127 (N.H. 2013)). The New Hampshire Supreme Court has explained that, in construing a statute, it looks to "the statute as a whole," rather than "merely look[ing] at isolated words or phrases." See DeVere, 781 A.2d at 27 (citing Appeal of Ashland Elec. Dept., 682 A.2d 710, 713 (N.H. 1996)). Courts "construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." State v. Fogg, 168 A.3d 1145, 1147 (N.H. 2017) (quoting State v. Maxfield, 117 A.3d 704, 706 (N.H. 2015)). "This enables [courts] to better discern

- 11 -

the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Zorn v. Demetri, 969 A.2d 464, 465 (N.H. 2009) (citation omitted); see Wolfgram v. N.H. Dep't of Safety, 140 A.3d 517, 521 (N.H. 2016) (quoting State v. Bulcroft, 101 A.3d 1065, 1066 (2014) (The New Hampshire Supreme Court "construe[s] statutes so as to . . . avoid an interpretation that would lead to an absurd or unjust result.")). We apply these standards in our review of the NH DPA.

The Customers' second count alleges that the Retailers "knowingly sold, rented, offered, or exposed for sale customers' motor vehicle records" in contravention of RSA section 260:14, IX(b). That section provides: "[a] person is guilty of a class B felony if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." RSA § 260:14, IX(b).

The Customers contend their driver's licenses, initially issued by the department and in the Customers' possession, are "motor vehicle records" as used in section IX(b). In support of this contention, they point to section I(a) of the NH DPA, which defines "[m]otor vehicle records" as "all applications, reports required by law, registrations, histories, certificates, and licenses issued or revoked by the department relative to motor vehicles and the information, including personal

information, contained in them." RSA § 260:14, I(a). Section I(c) clarifies that "[p]ersonal information" is "information in motor vehicle records that identifies a person, including a person's photograph or computerized image, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." RSA § 260:14, I(c).

We disagree with the Customers' reading. Instead, we hold that the Customers' driver's licenses, in their own possession, are not within the meaning of the prohibition in section IX(b). The Customers' reading is inconsistent with the NH DPA's other provisions and its purposes. As the district court highlighted, the NH DPA provides that "[p]roper motor vehicle records shall be kept by the department [of safety] at its office." RSA § 260:14, II(a). Section II further provides that "such records shall not be public records or open to the inspection of any person." Id. This section cannot plausibly be read to include one's own driver's license in one's own possession. Perhaps even more telling, the statute, at section VII, describes when an individual may have access to his or her own motor vehicle records: "A person shall have access to motor vehicle records relating to such person upon proof of identity." RSA § 260:14, VII.

Further, RSA section 260:14, III-V provide exceptions to the general rule that the records "shall not be public records

or open to the inspection of any person." See RSA § 260:14, III-V, II(a). Those exceptions include: "in connection with matters of motor vehicle or driver safety and theft" and to "[i]nsurance companies authorized to write automobile and personal excess liability insurance policies." RSA § 260:14, IV(a). The New Hampshire Supreme Court, while ruling on a different issue, has in fact briefly discussed this very provision. That court has stated: "In New Hampshire, a person's motor vehicle record is available, upon request and with permission of the individual whose record is requested, to members of the public, including potential employers and insurance agencies." Wolfgram, 140 A.3d at 521 (citing RSA § 260:14 (Supp. 2015)). This New Hampshire Supreme Court ruling reinforces our conclusion.

Section III explains that "[m]otor vehicle records may be made available pursuant to a court order or in response to a request from a state, a political subdivision of a state, the federal government, or a law enforcement agency for use in official business." RSA § 260:14, III.[2] Further, RSA section 260:14,

_____

[2] In DeVere, the New Hampshire Supreme Court found that section III of the statute is limited to governmental agencies, while section V "permits access for private nongovernmental entities, including a legitimate business." DeVere, 781 A.2d at 28 (citing RSA § 260:14, V(a)(1), (4)). Further, "[s]ection III provides for nonconsensual disclosure of personal information." Id. Even if we read only section V -- and not section III -- as applicable here, DeVere supports our holding. The DeVere court held that "the legislature intended that private parties satisfy

IV-a(a) provides: "[e]xcept for a person's photograph, computerized image, and social security number, motor vehicle records . . . shall be made available . . . " in the limited exceptions enumerated. This language indicates that the three listed items, i.e., a person's photograph, computerized image, and social security number ("SSN"), are exempted from the other disclosure provisions. See RSA § 260:14, IV(a); see also Remsburg v. Docusearch, Inc., 816 A.2d 1001, 1008 (N.H. 2003) (RSA § 260:14, IV-a (Supp. 2002) "prohibits the release of SSNs contained within drivers' license records."). The district court's "natural reading" of the statute "harmonizes the various provisions in [it] and avoids the oddities that [the Customers'] interpretation would create." See N.H. Lottery Comm'n v. Rosen, 986 F.3d 38, 58 (1st Cir. 2021) (first alteration in original) (citations omitted).

### 2. Count I: Section IX(a) of the NH DPA

Count I of the complaints alleges that the Retailers violated RSA section 260:14, IX(a) by disclosing information from the Customers' driver's licenses to a third-party entity: TRE. The NH DPA provides in section IX(a):

> A person is guilty of a misdemeanor if such person knowingly discloses information from a department record to a person known by such person to be an unauthorized person . . . . Each such unauthorized

the requirements of section V before obtaining access to motor vehicle records." Id.

- 15 -

disclosure . . . shall be considered a separate offense.

RSA § 260:14, IX(a).

The parties focus their arguments on whether the driver's licenses as used by the Customers here are "department records" under the statute. They recognize that, unlike the "motor vehicle records" analyzed in the prior section, the statute does not directly define "department record." See RSA § 260:14. Citing Black's Law Dictionary and Merriam-Webster, the Customers urge that their driver's licenses constitute "department records."[3] They contend "department record" in this context refers to a New Hampshire Department of Safety ("DoS") record, which would relate to any one of the seven divisions within the Department of Safety. Further, on appeal, the Customers argue that the district court used too restrictive of a definition for the word "record."[4]

By contrast, the Retailers argue that the Customers' driver's licenses are not "department records" as that term is used in RSA section 260:14, IX(a). They assert that a "department

_____

[3] The Customers quote Black's Law Dictionary as defining "record" as "information that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form." See Black's Law Dictionary (11th ed. 2019).

[4] The Customers urge us to consider whether "department record" and "motor vehicle record" have different meanings, as used in the NH DPA. We decline their invitation to do so, as our foregoing analysis squarely addresses their claims without needing to reach that question.

record" is a "record in the DoS's possession or obtained directly from the DoS under RSA § 260:14, not a driver's license held and 'freely provided' by the license holder."[5]  The Retailers also look to Merriam-Webster's definitions of "department" and "record" to support their position.[6]  Finally, they cite to the rest of the NH DPA, concluding that the provision does not make sense within the context of the entire act, unless read in the way they recommend. We agree with the Retailers' understanding of the statute.

We focus on the plain meaning of the whole statute, not the meaning of isolated sentences or phrases.  Reading the statute as a whole -- rather than with an individualized focus on the provisions at issue -- makes clear that "department records" do not include driver's licenses in the Customers' possession.

As mentioned, the NH DPA does not directly define "department record."  See RSA § 260:14.  But, and as the district court correctly noted, "department" is defined in the statute's "implementing regulations as 'the New Hampshire department of

_____

[5] The Retailers also argue that "TRE is not an 'unauthorized person'" under the statute.  See RSA § 260:14, IX(a).  In support of this argument, they state:  "A person who receives driver's license information voluntarily disclosed by the driver is not an 'unauthorized person.'"  We need not address this issue, as we resolved the primary issue in favor of the appellees.  See Barbosa v. Midland Credit Mgmt., 981 F.3d 82, 92 n.12 (1st Cir. 2020).

[6] The Retailers cite Merriam-Webster as defining "record" as "something that records," such as "an authentic official copy of a document deposited with a legally designated officer."

- 17 -

safety.'" Smith, 707 F. Supp. 3d at 151 (quoting N.H. Code Admin. R. Ann. Saf-C 5601.4 (2024)). The district court added that, while "record" is not explicitly defined, the "plain meaning of 'record' in this context is 'an authentic official copy of a document entered in a book or deposited in the keeping of some officer designated by law.'" Id. (quoting Webster's Third New Int'l Dictionary 1898 (Philip Babcock Gove et al. eds., 1993)). The district court then held that, taken together, the term "'department record' as that phrase is used in RSA 260:14, IX(a) means authentic copies of documents deposited and kept with the New Hampshire department of safety." Id. So, the district court held, the information disclosed to the Retailers "was not within a document obtained from the department of safety." See id. at 152.

The district court's reading best comports with New Hampshire's rules of statutory interpretation.[7] We thus affirm

---

[7] We deny the Customers' opposed motion that we take judicial notice of an amicus brief in an unrelated case. We also reject the argument that we should give special weight to this amicus brief submitted by the New Hampshire Department of Justice and the New Hampshire Department of Safety. The New Hampshire Supreme Court has previously held that it does not defer to the executive branch's statutory interpretation. See In re Pennichuck Water Works, Inc., 992 A.2d 740, 748 (N.H. 2010) (citations omitted).

the district court's holding in favor of the Retailers on this claim.[8]

## III. CONCLUSION

For the foregoing reasons, the district courts' orders are **affirmed**.

---

[8] As a fallback position, the Customers suggest that if we do not rule in their favor, we should certify the two issues to the New Hampshire Supreme Court. We disagree. We have faithfully applied New Hampshire's rules of statutory interpretation, as set forth by the New Hampshire Supreme Court, and see no need to certify.